537.18127/MGD

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

INDIAN HARBOR INSURANCE COMPANY,

    Plaintiff,

v.                                        CIVIL ACTION NO. _____

ALTERRA CAPITAL GROUP, LLC a/k/a
ALTERRA CAPITAL GROUP, LLC – MEMPHIS;
2861 KIMBALL APARTMENTS, LLC;
WINBRANCH II, LLC; and
IMPERIAL CAPITAL BANK,

    Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Indian Harbor Insurance Company, hereby sues Defendants, Alterra Capital Group, LLC a/k/a Alterra Capital Group, LLC – Memphis, 2861 Kimball Apartments, LLC, Winbranch II, LLC (hereinafter, collectively "Insureds"), and Imperial Capital Bank, seeking a declaration that certain losses caused by or related to fires occurring on or about November 27, 2009, and February 9, 2010, are not covered or are otherwise excluded under a policy of insurance. For its Complaint for Declaratory Judgment, Indian Harbor Insurance Company states to the Court as follows:

**PARTIES**

1. Plaintiff, Indian Harbor Insurance Company (hereinafter, "Indian Harbor"), is a North Dakota corporation with its principal place of business located at 70 Seaview Avenue, Stamford, Connecticut 06902-6040, and is an eligible surplus lines insurer, writing insurance in the state of Tennessee.

2. Defendant Alterra Capital Group, LLC a/k/a Alterra Capital Group, LLC – Memphis is a limited liability company which was organized under the laws of the state of Florida.  It can be served through its registered agent for service of process, Adam Singer, at 20201 N.E. 16th Place, Miami, Florida 33179.

3. Defendant 2861 Kimball Apartments, LLC is a domestic limited liability company which was organized under the laws of the state of Tennessee.  It can be served through its registered agent for service of process, National Registered Agents, Inc., at 2300 Hillsboro Road, Suite 305, Nashville, Tennessee 37212.

4. Defendant Winbranch II, LLC is a domestic limited liability company which was organized under the laws of the state of Tennessee.  It can be served through its registered agent for service of process, National Registered Agents, Inc., at 2300 Hillsboro Road, Suite 305, Nashville, Tennessee 37212.

5. Defendant Imperial Capital Bank is a corporation which was organized under the laws of the state of California and is located at 888 Prospect Street, Suite 110, La Jolla, California 92037. It can be served through its registered agent for service of process, C.T. Corporation System, at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929.

## JURISDICTION AND VENUE

6. Plaintiff brings this action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

7. This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## **THE POLICY**

9. On or about May 1, 2009, Indian Harbor issued and delivered a property insurance policy pursuant to the Tennessee surplus lines insurance statutes to Winbranch II, LLC, which provided certain described coverage for the real and personal property at four (4) separately scheduled locations in Memphis, Shelby County, Tennessee, under Policy No. FCI 005 3063 (the "Policy"), a copy of which is attached hereto as Exhibit "A".

10. The Policy was subsequently endorsed (Endorsement No. 1) to delete coverage for Location No. 1: 3595 Millbranch Road.

11. The property involved in this Declaratory Judgment action is located at 2861 Kimball in Memphis, Tennessee, and is described in the policy as Location Number 2 (hereinafter, "insured property").

12. With respect to Location No. 2 under the Policy, 2861 Kimball Apartments, LLC is a named insured.

13. Imperial Capital Bank is shown in the policy as a mortgagee with respect to Location No. 2. The mortgage once held by Imperial Capital Bank on the property located at 2861 Kimball in Memphis, Tennessee, however, had actually been paid off on or about September 19, 2008. Imperial Capital Bank had no interest in the insured property and thus, under the Policy, is not entitled to receive payment for any claims or losses (see *Release of Deed* attached as Exhibit "B").

14. The Policy was subsequently endorsed (Endorsement No. 2) to amend the named insured to include the name Alterra Capital Group, LLC – Memphis.

15. The Policy was also endorsed with respect to Location No. 2, the insured property, (Endorsement No. 3) to amend the occupancy to be vacant in lieu of occupied; to amend the deductible amount to $50,000.00 in lieu of $10,000.00; amend the valuation provision to actual cash value in lieu of replacement cost; amend the cause of loss to *Basic* in lieu of *Special;* and warranted

that the property was "Locked & Secured," was "gated and fenced," and that there was "24 hour armed security."

16. Endorsement No. 3 made these amendments to the Policy by adding the following forms: (1) Causes of Loss – Basic Form (CP10100402); (2) Protective Safeguards (IL04150498); and (3) Vacancy Permit (CP04500788). Endorsement No. 3 and the referenced forms are attached hereto collectively as Exhibit "C."

17. Protective Safeguard Endorsement – Form IL04150498 required that the property be locked and secured, gated and fenced, and have twenty-four (24) hour armed security.

18. Protective Safeguard Endorsement – Form IL04150498 further provided that, under the endorsement, any loss or damage caused by or resulting from fire is excluded from coverage if, before the loss, the insured fails to maintain the protective safeguards set forth in the endorsement in complete working order.

19. Specifically, the relevant language in Protective Safeguard Endorsement – Form IL04150498 states as follows:

> **PROTECTIVE SAFEGUARDS**
>
> **1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
>
> **2.** The protective safeguards to which this endorsement applies are identified by the following symbols:
>
> **"P-9":** Warrant: Locked & Secured, property gated and fenced, 24 hour armed security
>
> **B.** The following is added to the EXCLUSIONS section of:
>
> CAUSES OF LOSS - BASIC FORM
> CAUSES OF LOSS - BROAD FORM
> CAUSES OF LOSS - SPECIAL FORM
>
> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

4

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

20.    The policy also includes Protective Safeguard Endorsement – Form WKCP 031108 which applied to all four (4) locations and required all doors and windows of any building identified in the Schedule to be securely locked so as to prevent the unlawful entry of unknown parties.  Specifically, the relevant language in Form WKCP 031108 states as follows

1. The following is added to the COMMERCIAL PROPERTY CONDITIONS: As a condition of this insurance, you are required to securely lock all doors and windows of any building identified in the Schedule to prevent unlawful entry by any unknown person(s).
2. The following is added to the EXCLUSIONS section of:

    CAUSES OF LOSS - BASIC FORM

    CAUSES OF LOSS - BROAD FORM

    CAUSES OF LOSS - SPECIAL FORM

    We will not pay for loss or damage at any building identified in the Schedule caused by or resulting from any of the following causes of loss, if covered under this policy, unless there is visible evidence of forcible entry:

    a. Fire;
    b. Riot or Civil Commotion;
    c. Vandalism; or
    d. Theft.

## **FACTS GIVING RISE TO THIS ACTION**

**November Fire**

21.    On or about November 27, 2009, at approximately 4:32 p.m., one or more unknown and unauthorized individuals, who had entered one of the buildings on the insured property (Building 8), set a fire inside, which caused the building to burn (hereinafter, the

"November Fire").

22. The Memphis Fire Department responded to the November Fire.

23. According to the Memphis Fire Department, the November Fire was intentionally set.

24. At the time of the November Fire and for a period of time before, the insured property was vacant, and on November 27, 2009, the fire hydrants located on the property were inoperable.

25. Following the November Fire, the Defendants submitted a Notice of Loss advising Indian Harbor of the fire and loss at the insured property.

26. Indian Harbor, through U.S. Adjustment Company, with the assistance of Tenco Services, undertook to investigate the November Fire subject to a non-waiver agreement and reservation of rights.

27. During the course of the investigation of the November Fire, Indian Harbor, through its representatives, requested that the Insureds furnish documents and certain information pertaining to the provision of security of and at the insured property.

28. On March 17, 2010, Indian Harbor sent a notice to Robert Sena, representative of the Insureds, requesting that he appear for an Examination Under Oath and produce certain specific documents pertaining to the insurance, insured property, and the loss. The Examination Under Oath was thereafter scheduled to be taken by agreement on March 31, 2010.

29. In connection with the Examination Under Oath and request for documents, the Insureds produced approximately 850 pages of documents.

30. On April 20, 2010, Tenco Services received in the mail a Sworn Statement in Proof of Loss signed by Mr. Sena claiming $1,024,534.30 in damages as a result of the November Fire. A copy of the Proof of Loss is attached hereto as Exhibit "D."

31.     On April 27, 2010, Indian Harbor received from Mr. Sena his original signed and sworn transcript of the Examination Under Oath.

**February Fire**

32.     On or about February 9, 2010, one or more unknown and unauthorized individuals, had again entered one of the buildings on the insured property (Building 5), and set another file inside, which caused the building to burn (hereinafter, the "February Fire").

33.     The Memphis Fire Department responded to the February Fire.

34.     According to the Memphis Fire Department, the February Fire was intentionally set.

35.     Following the February Fire, the Insureds submitted another Notice of Loss advising Indian Harbor of the fire and loss at the insured property.

36.     Indian Harbor, through U.S. Adjustment Company, with the assistance of Tenco Services, undertook to investigate the February Fire subject to a Non-Wavier Agreement and Reservation of Rights.

37.     During the course of the investigation of the February Fire, Indian Harbor, through its representatives, again requested that the Insureds furnish documents and certain information pertaining to the provision of security of and at the insured property.

38.     Based upon the findings of the investigations of both the November and February Fires, Indian Harbor has learned that "24 hour armed security" had not been maintained at the insured property either before or after the time of the November Fire or before or at the time of the February Fire.

39.     Rather than 24 hour armed security at the insured property, it was learned, through the investigation, that the security services utilized by the Insureds instead provided intermittent visits to the property.

40.     Through Indian Harbor's investigation, it also learned that all doors and

windows had not been securely locked so as to prevent the unlawful entry by unknown persons.

41. The Insureds had control over the protective safeguards required by the policy yet failed to maintain them in complete working order.

42. Because of the violation of the protective safeguards requirements under the policy, Indian Harbor, on May 14, 2010, denied coverage for Insureds' claim for insurance proceeds as a result of both the November 27, 2009 fire loss and the February 9, 2010 fire loss.

## DECLARATORY JUDGMENT

43. Indian Harbor adopts and re-alleges the allegations in the preceding paragraphs 1 through 42 as though set forth here and now.

44. Based upon the foregoing, including all terms and conditions of the Indian Harbor policy at issue, the Policy, Indian Harbor's rights and duties with respect to the Insureds have been called into question.

45. Due to the circumstances of the November and February fires and the terms and conditions of the Indian Harbor policy, there exists a bona fide controversy between the parties with respect to Indian Harbor's obligation to afford coverage for the aforementioned claims and losses.

46. The Policy contains the conditions as set forth in the Protective Safeguards Endorsements set forth above and contained in Exhibit "A." Based on the documents submitted by the Insureds to Indian Harbor, the investigation of the fire officials and Indian Harbor, and the testimony given on behalf of the Insureds, it is the position of Indian Harbor that the Insureds did not maintain in a complete working order "24 hour armed security" and securely locked doors and windows so as to prevent the unlawful entry by unknown persons at the insured property. The Insureds had knowledge of the impairment

in these safeguards.

47. Accordingly, on May 14, 2010, Indian Harbor denied coverage for the Insureds' claims for insurance proceeds as a result of the November 27, 2009, and February 9, 2010, fire losses for the reasons set forth in this Complaint for Declaratory Judgment.

48. The Insureds have maintained that Indian Harbor is responsible under the Policy to pay insurance proceeds for the fire losses occurring in November 2009 and February 2010.

49. Indian Harbor maintains that it is not liable to pay any amounts claimed by the Insureds in relation to these claims.

50. Accordingly, an actual controversy exists between Indian Harbor and the Insureds as to whether the Insureds are entitled to any insurance proceeds under the Policy.

WHEREFORE, Indian Harbor respectfully requests that process issue and be served upon the Insureds and Capital National Bank and, thereafter, that this matter be advanced upon the Court's calendar for a speedy hearing pursuant to Fed. R. Civ. P. 57 and that this Court adjudicate the rights, responsibilities, and liabilities of the parties and enter a judgment declaring that:

(a) Indian Harbor is not liable to pay any amounts claimed by the Insureds, Imperial Capital Bank or anyone else in relation to the claims resulting from the fire loss of November 27, 2009;

(b) Indian Harbor is not liable to pay any amounts claimed by the Insureds, Imperial Capital Bank or anyone else in relation to the claims resulting from the fire loss of February 9, 2010;

(c) Indian Harbor is not liable to pay any amounts whatsoever claimed by

Insureds, Imperial Capital Bank or anyone else under the Policy at issue or in connection with these two (2) fire losses; and

(d) Indian Harbor be awarded any and all such further relief to which it may be entitled.

Respectfully submitted,

SHUTTLEWORTH WILLIAMS, PLLC

BY: *s/ Michael G. Derrick*
MICHAEL G. DERRICK (#14820)
mderrick@shuttleworthwilliams.com
W. SCOTT HICKERSON (#26369)
shickerson@shuttleworthwilliams.com
22 North Front Street, Suite 850
Memphis, Tennessee 38103
Telephone: (901) 526-7399
Facsimile: (901) 526-5056
**Attorneys for Plaintiff Indian Harbor Insurance Company**

H:\EDSISS\DOCS\18127\BF8484.DOC